IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PENDLETON DIVISION

AMERICAN FEDERATION OF STATE, COUNTY,
AND MUNICIPAL EMPLOYEES COUNCIL 75,

    Plaintiff

v.

GOOD SHEPHERD HEALTH CARE SYSTEM,

    Defendant

Civil No. 2:09-cv01446

FINDINGS AND
RECOMMENDATION

SULLIVAN, Magistrate Judge

    Plaintiff American Federation of State, County, and Municipal Employees Council 75 ("Union"), an Oregon corporation, filed a complaint against defendant Good Shepherd Health Care System ("Hospital"). Plaintiff alleged a claim under the Labor-Management Relations Act ("LMRA"), 29 U.S.C. §185, for an alleged breach of a collective bargaining agreement between

Page 1 - FINDINGS AND RECOMMENDATION

Union and Hospital.  The case arises from the termination of a union member, Lauretta Keene, by Hospital.  In response to Union's complaint, defendant filed a motion to dismiss under Fed. R. Civ. P. 12(b)(1).  For the reasons set forth below, defendant's motion to dismiss should be granted.

*Factual Summary*

Lauretta Keene worked for Hospital from July 20, 2005 until October of 2008 when she was terminated.  During her employment, Union and Hospital were parties to a written collective bargaining agreement ("CBA").  Keene was a member of the bargaining unit.

Plaintiff alleges that Keene worked in the Materials Management Department of Hospital and was responsible for cleaning and sterilizing equipment used in medical procedures.  Keene had been recognized by her employer for her technical skills and good performance.  However, her performance evaluations also indicated that she needed improvement in teamwork and personal relationships with her co-workers.  Compl. Ex. 3.  Keene was outspoken and critical about improper cleaning of equipment which she had observed by her coworkers.  Keene's criticisms upset both her coworkers and her supervisor, Sue Gardner.  Plaintiff alleges that during the several months preceding Keene's termination, her supervisor and coworkers had accused her of misconduct and that she had been singled out for discipline on two occasions.  Keene sought a transfer to the Operating Room and was transferred on or before October 8, 2008.

Plaintiff alleges that Gardner and possibly others in Materials Management tried to prevent the transfer by claiming that Keene was planning to sabotage her former department.

Page 2 - FINDINGS AND RECOMMENDATION

Keene met with the vice president of Hospital and the manager of the Operating Room about Gardner's allegations. Keene agreed that no retaliation against her former department would occur. Gardner succeeded in delaying the transfer for two weeks. On Keene's final day in Materials Management, Keene had a conversation with one of her coworkers about Gardner. Keene indicated that she would not work for Gardner again and that she was "tired of the games and drama." Compl., ¶ 34.

On the second day of Keene's tenure in the Operating Room, she was asked to report to Human Resources after her shift. When she arrived she was given a dismissal letter and final paycheck. On October 31, 2008, a grievance was filed alleging that Keene was terminated without just cause. Union alleges that it requested reinstatement with back pay for Keene. In accordance with the grievance procedure provided for in the CBA, Union alleges that it advanced the grievance to Hospital's President who upheld the termination. In his letter, the President noted that Keene had been through a "progressive disciplinary process" and that "the preponderance of the results of my investigation supports the termination." Compl. Ex. 8. The Union then requested that the Board of Adjustment be convened; Union and Hospital selected their panel members. Union further alleges that after a hearing, the Board of Adjustment was deadlocked, and the matter was presented to Hospital's Board of Directors for review. The Board of Directors upheld the termination. Plaintiff alleges that "This was the final step of the grievance procedure, and no binding arbitration provision exists in this Contract." Comp. ¶ 45. Union filed this lawsuit claiming that Hospital breached the just cause provision of the CBA.

*Standard of Review*

A motion to dismiss under Fed. R. Civ. P. 12(b)(1) addresses the court's subject matter jurisdiction.  The burden of establishing the subject matter jurisdiction rests upon the party asserting jurisdiction.  *Rice v. Providence Regional Medical Center Everett,* 2009 WL 2342449 (W.D. Wash. 2009), citing *Kokkonen v. Guardian Life Ins. Co.,* 511 U.S. 375, 377 (1994).  When considering a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(1), the court is not restricted to the face of the pleadings, but may review any evidence, such as affidavits and testimony, to resolve factual disputes concerning the existence of jurisdiction. *McCarthy v. United States*, 850 F.2d 558, 560 (9th Cir. 1988).  Failure to state a claim under LMRA § 301(a) is a defect in subject matter jurisdiction.  *United States v. State of Wash.*, 969 F. 2d 752, 755 (9th Cir. 1992).

*Discussion*

Union contends that Hospital did not have just cause to terminate Keene.  Union alleges Keene's termination lacked due process, lacked sufficient evidence to prove the alleged misconduct, and that the sanction imposed was excessive.  Compl. ¶ 38.  Union argues that Hospital breached Article 4 of the CBA and that it may enforce the just cause provision of the CBA in federal court under LMRA § 301(a) despite the grievance procedure provided for in the CBA.

1.   **Collective Bargaining Agreement between the Parties**.

Article 4 of the CBA provides that the employer has the right to "promote, demote,

suspend, discipline or discharge Employees for cause." Mot. to Dismiss, Ex. 2, at 8.[1]

Article 10 of the CBA contains the grievance procedure whereby the parties agreed to resolve disputes about alleged violations of the CBA. Mot. to Dismiss, Ex. 2 at 23-26. Section 10.2 of the CBA provides that a grievance is defined as "a claim by an affected Employee or the Union that the Employer has violated a provision of this Agreement." *Id*. The procedure is the exclusive means for resolution of a grievance under the CBA and has four steps.[2] Section 10.3(e) notes that the grievance procedure is final and binding. *Id.*

Section 21.1 of the CBA provides that the agreement is the "sole source of rights of the Union and the rights of any employee covered by this Agreement...." *Id.* at 30. Section 22.1 and 22.2 provide that the CBA is the "full and complete Agreement" and that the parties "acknowledge that during negotiations which resulted in this Agreement, each and all had the

---

[1] Union agrees that the contract attached as Exhibit 2 to defendant's motion to dismiss is the appropriate contract.

[2] Step 1: <u>Employee and Immediate Supervisor</u>: "Any employee believing he/she has a grievance shall present the grievance in writing to the employee's supervisor..."
Step 2: <u>Employee and Vice President</u>: "If the matter is not satisfactorily resolved at Step 1, it shall be presented in writing to the Division Vice President ...[T]he Division Vice President shall then meet with the employee and if so desired an Union representative..."
<u>Mediation</u>: "If the grievance is not resolved at Step 2, the Union and Employer may mutually agree to submit the dispute to mediation by the Federal Mediation and Conciliation Service."
Step 3: <u>Union and President</u>: "If the grievance is not resolved at Step 2 or after mediation...the Union..shall...present the grievance in writing to the [Good Shepherd Health Care System] President, or his designee, for consideration and determination. A Labor Relations Representative or other field representative of the Union, the grievant, and other pertinent parties shall meet with the President, or his designee...to review the grievance."
Step 4: <u>Board of Adjustment</u>: "If the grievance is still unresolved, the Union may pursue the matter to an outside Board of Adjustment consisting of two Board Members. The Union shall appoint one member and the Employer one member. The Board shall conduct a hearing...The Board shall render a decision within 30 days, which shall be binding on the parties. In the event the Board is deadlocked and cannot reach a unanimous decision, the Union may pursue the mater to the Employer's Board of Directors whose decision shall be final and binding." *Id*. at 23-24.

Page 5 - FINDINGS AND RECOMMENDATION

unlimited right and opportunity to make demands and proposals with respect to any subject or matter appropriate for collective bargaining and that the understandings and agreements arrived at by the parties after exercise of that right and opportunity are set forth in this Agreement." *Id.* at 31.

    **2. Union's Arguments**

    A. Jurisdiction under LMRA §301(a)

Union contends that the court has subject matter jurisdiction pursuant to LMRA §301(a) which provides a union or an employee with a federal cause of action against an employer for breach of a collective bargaining agreement.[3] See *Hines v. Anchor Motor Freight, Inc.,* 424 U.S. 554, 562 (1976); *Painting and Decorating Contractors Ass/n v. Painters and Decorators Joint Comm., Inc.*, 707 F.2d 1067 (9th Cir. 1983). Union argues that it's "sole mechanism for enforcement of the contract is through federal action." Pl. Mem. in Opp'n to Mot. to Dismiss, p. 9.

Union argues that LMRA § 301(a) allows the court to review whether Hospital violated the just cause provision of the CBA when it terminated Keene. Union states, "this is a suit involving the enforcement of a [CBA] and that the resolution of the dispute will be governed by interpretation of Article 4 [just cause provision] and possibly Article 10 [grievance procedure] of the contract." Pl. Mem. in Opp'n to Mot. to Dismiss, p. 3. There is no dispute that Union participated in the grievance procedure agreed upon by the parties which addressed plaintiff's

---

[3] 29 U.S.C. §185 (a) provides: "Suits for violations of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined by this chapter,...may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties."

allegations that Keene was terminated without just cause.

It has long been an established precept of federal labor law that the method of dispute resolution agreed to by the parties in their labor agreement takes primacy over civil actions for breach of contract. *Vaca v. Sipes,* 386 U.S. at 186; *Hines v. Anchor Motor Freight, Inc,* 424 U.S. at 554; *DelCostello v. Int'l Broth. of Teamsters,* 462 U.S. 151, 164-65 (1983); *Seborowski v. Pittsburg Press Co.,* 288 F.3d 163, 167 (3rd Cir. 1999), (citing *Vaca v. Sipes*, 386 U.S. at 184). In several opinions, the Ninth Circuit has applied Supreme Court precedent that, when the relationship between the parties is governed by a CBA that contains exclusive grievance and arbitration procedures, an employee may not maintain a claim against the employer under the CBA if the Union provided fair representation. *See, e.g., Johnson v. U.S. Postal Serv.,* 756 F.2d 1461, 1467 (9th Cir. 1985); *Stevens v. Moore Bus. Forms, Inc.,* 18 F.3d 1443, 1447 (9th Cir 1994); *Slevira v. Western Sugar Co.,* 200 F.3d 1218, 1222 (9th Cir. 2000) (per curiam). The duty of fair representation by Union is not an issue here nor is there any allegation that Hospital repudiated the grievance procedure. See *Schalk v. United Parcel Ser., Inc.,* No. 05-275-JO, 2006 WL 1455611 (D.Or. 2006) (plaintiff's union did not breach its duty of fair representation, and therefore, the plaintiff could not bring a claim under § 301(a) in federal court); *Vaca v. Sipes*, 386 U.S. at 185.

If a collective bargaining agreement contains exclusive and final procedures for the resolution of employee grievances, the employee's ability to bring an action under § 301(a) is severely restricted. If the grievance is processed through an exclusive grievance procedure and the employee receives a determination of the grievance that is final and binding under the contract, without a showing that the union did not fairly represent the employee in the grievance

Page 7 - FINDINGS AND RECOMMENDATION

procedure, the employee may not litigate the merits of the grievance. *Id.* at 186.

Here, the parties agreed that the Board of Adjustment or Board of Directors of Hospital would be the final decision maker. This procedure is entitled to the same deference as arbitration. *See Sheet Metal Workers Int'l Ass'n Local Union 420 v. Kinney Air Conditioning Co.*, 756 F. 2d 742, 744 (9th Cir. 1985).

Union cites *Granite Rock Co. v. Int'l Brotherhood of Teamsters,* 546 F.3d 1169 (9th Cir. 2008) for the proposition that federal jurisdiction exists over claims brought under LMRA § 301(a) for breach of contract between an employer and a labor organization. The Supreme Court has recently reviewed the Ninth Circuit decision in *Granite Rock*. *Granite Rock Co. v. Int'l Brotherhood of Teamsters*, 2010 WL 2518518 (U.S. decided June 24, 2010). The *Granite Rock* case involves a dispute about when a CBA was actually formed and whether the union and employer could litigate this issue in federal court under § 301(a). The Court held that the parties' dispute over the ratification date of the CBA was not a decision to be made by the arbitrator as "arising under" the CBA but by the District Court under § 301(a). *Id*. at *13.[4]

Mere reference to a collective bargaining agreement does not confer federal question jurisdiction under § 301(a). Rather, there must be a breach of a specific contract duty, such as the employer's repudiation of the grievance procedure, *Vaca v. Sipes,* 386 U.S. at 185, see also *Dunlap v. Fred Meyer Stores*, 2006 WL 2901841 (D. Or. 2006), or an issue involving contract formation as in *Granite Rock*. The instant case is not about formation or applicability of the CBA. Union argues that it seeks to enforce the just cause provision of the contract. However,

---

[4] The Supreme Court also held that a tortious interference claim was outside the scope of the LMRA.

it agreed to submit such an issue to the grievance procedure.

Here, the terms of the CBA itself govern the resolution of disputes regarding the parties' rights as defined by Article 4 "to promote, to demote, suspend, discipline or discharge employees for cause".  Mot. to Dismiss, Ex. 2 at 7.  Plaintiff, on behalf of Keene, grieved the termination.  The grievance procedure addressed plaintiff's allegations that Keene was terminated without just cause.  Article 10 of the CBA provides for final and binding dispute resolution as the exclusive means to resolve a such a grievance.  There is no allegation that the grievance procedure of the CBA has not been followed.

Union claims it raises a novel issue here because Union *has* exhausted the steps of the grievance procedure as set out in the CBA.   Plaintiff seeks to challenge enforcement of the just cause provision and the grievance procedure itself and argues that these claims provide subject matter jurisdiction.   Section 10.2 of the CBA states that a grievance is defined as "a claim by an affected employee or the Union that the employer has violated a provision of this Agreement." Def. Mot. to Dismiss, Ex. 2, p. 24.  Union fully participated in the grievance procedure.  While Hospital referred to the suit having been brought by Keene, Union brought the lawsuit.[5]  The court's findings and recommendation are based upon the facts as presented, not on characterizations made in defendant's brief.  Neither the factual allegations nor case law support

---

[5] Union argues that Hospital has incorrectly characterized this lawsuit as a suit by Ms. Keene and, therefore, cases relied upon by Hospital do not control.  Those cases concerned suits by employees against employers or a union based on violations of a CBA rather than, as here, a suit by a union based upon violations of a CBA. See *Clayton v. International Union, et al.* 451 U.S. 679, 682 (1981);  *Republic Steele Corp v. Maddox,* 379 U. S. 650, 652-53 (1965); *Olguin v. Inspiration Consolidated Copper Co.*, 740 F.2d 1468, 1472 (9th Cir. 1984) (overruled on other grounds by *Allis Chalmers Corp. v. Lueck*, 471 U.S. 202, 220 (1985)).   Hospital  cites these cases for the general proposition that an employee must attempt to exhaust exclusive grievance procedures provided for in a CBA before any suit may be brought against an employer or union.

Union's arguments in favor of subject matter jurisdiction under §301(a).

    B.  Fairness of Collective Bargaining Agreement

Union argues "the grievance procedure was intended solely to be an internal means of adjusting disputes in the hopes of avoiding litigation, be it through National Labor Relations Board complaints or complaints filed in courts. There was never any intent to waive the right to proceed under Section 301." Pl. Mem. in Opp'n to Mot. to Dismiss, p. 11. Plaintiff contends that because there is no arbitration provision in the CBA, as a matter of policy, it is entitled to sue in federal court under § 301(a). Union points out that its attempt to negotiate an arbitration provision in the CBA was unsuccessful.

As noted by Union, there is a strong judicial preference for arbitration of labor disputes and courts defer to the determination of arbitrators. *Steelworkers v. American Mfg. Co.,* 363 U.S. 564 (1960), *Steelworkers v. Warrior & Gulf Navigation Co.,* 363 U.S. 574 (1960), and *Steelworkers v. Enterprise Wheel and Car Corp.,* 363 U.S. 593 (1960). However, binding arbitration provisions are not compulsory. *Fortune v. Nat'l Twist Drill & Tool Division, Lear Sigler, Inc.,* 684 F.2d 374, 375 (6th Cir. 1982) ("where the parties fail to agree upon arbitration as a method of breaking a deadlocked dispute over a grievance, we are cited to no provision of federal law which gives the federal court the power to make a decision for the parties."); see also *Sheet Metal Workers Intern. Ass'n Local Union No. 420 v. Kinney Air Conditioning,* 756 F.2d at 746 ("Where parties have agreed upon a particular method of dispute resolution, it should generally be presumed to be fair."). In this case, Union and Hospital agreed to be bound by final adjustment of a grievance by the Board of Adjustment, or if deadlocked, by the Board of Directors. Mot. to Dismiss, Ex. 2 at 24.

Union represents that by entering into the CBA it did not intend to waive its right to file a claim in federal court. Plaintiff cites *Groves v. Ring Screw Works*, 498 U.S. 168 (1990) to support its argument. The *Grove* case involved a CBA that provided for a voluntary grievance procedure that included arbitration. The CBA also provided for a right to resort to economic weapons, i.e. strike, if the voluntary grievance procedure failed. The union and union members (who had allegedly been terminated without just cause) invoked the voluntary grievance procedure without success but decided not to invoke either arbitration or the right to strike. In *Groves*, the Supreme Court held that the parties could bring their claim to federal court under § 301(a). The Court decided that while the right to strike was protected by federal labor law, the Court would not construe the CBA as requiring economic warfare as the exclusive, or even desirable method for settling deadlocked grievances. In such a case the federal court would not be divested of jurisdiction to decide the case. *Id.*

In deciding *Groves,* the Court recognized that under § 301(a), there is a strong presumption that favors a neutral forum for the peaceful resolution of disputes. Citing § 203(d) of the LMRA, the Court also recognized that "a presumption favoring access to a judicial forum is overcome whenever the parties have agreed upon a different method for the adjustment of their disputes." *Id*. at 174-75.[6]

Here, unlike *Groves*, the CBA provides for an exclusive, not voluntary, method of peacefully resolving disputes between an employer and an employee or union. This is not a

---

[6] Section 203(d) of the LMRA provides: "Final adjustment by a method agreed upon by the parties is declared to be the desirable method for settlement of grievance disputes arising over the application or interpretation of an existing collective-bargaining agreement." 29 U.S.C.§ 173(d).

Page 11 - FINDINGS AND RECOMMENDATION

question of waiving a right to proceed in federal court. Rather, the issue is whether the CBA is the exclusive, agreed upon method for dispute resolution.

Union argues that the CBA is "unfair" and "one-sided". Plaintiff submits declarations of Ken Allen, Executive Director of Union, and Roger Bouch,[7] chief negotiator for the Union. Allen and Bouch both stated that the Union requested that an arbitration provision be included in the CBA. Hospital would not agree. No "waiver" of a judicial remedy was ever discussed. Decl. of Ken Allen, ¶ 5 and 6; Decl. of Roger Bouch, ¶ 5 and 6.

Despite these assertions by Allen and Bouch, Union executed the CBA which unequivocally provided that Article 10 of the CBA is the exclusive method for resolving disputes and that the grievance procedure is final and binding. The CBA is the complete agreement of the parties and each party had the "unlimited right and opportunity to make demands and proposals...and that the understandings and agreements arrived at by the parties after the exercise of that right and opportunity are set forth in this Agreement." Mot. to Dismiss, Ex. 2 at 31. The parties agreed to be bound by the grievance procedure in the CBA and no reservation of any right to arbitrate or sue in federal court was included in the contract. The court will not rewrite the contract for the parties to include such a provision.

Plaintiff has failed to state a claim for breach of the CBA. I recommend that defendant's motion to dismiss be GRANTED.

*Conclusion*

---

[7] Bouch, indeed, signed the CBA for Union.

Page 12 - FINDINGS AND RECOMMENDATION

Based on the foregoing, defendant's motion to dismiss (Doc. #5) should be GRANTED.

## SCHEDULING ORDER

The Findings and Recommendation will be referred to a United States District Judge. Objections, if any, are due July 30, 2010. If no objections are filed, the findings and Recommendation will go under advisement on that date.

If objections are filed, then a response is due within 14 days after being served with a copy of the objections. When the response is due or filed, whichever date is earlier, The Findings and Recommendation will go under advisement.

DATED this 16 day of July, 2010.

s/ Patricia Sullivan<br>
Patricia Sullivan<br>
United States Magistrate Judge